Affirmed and Memorandum Opinion
filed November 5, 2009.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00268-CR



jerold anthony
williams, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 339th District Court

Harris County, Texas

Trial Court
Cause No. 1108368



 

MEMORANDUM OPINION 

Appellant Jerold Anthony Williams challenges the
trial court’s denial of his motion to suppress.  We affirm.

I. 
Factual and Procedural Background

Appellant was charged by complaint with the felony
offense of possession with intent to deliver a controlled substance, cocaine. 
Appellant filed a motion to suppress the cocaine discovered on his person after
a felony stop.  At the motion-to-suppress hearing, the parties stipulated that
the search at issue in this case was performed without a warrant. Viewing the
evidence in the light most favorable to the trial court’s ruling,[1] the
evidence from the hearing shows the following: 

On March 15, 2007, Houston Police Department Gang
Task Force officer Hans Wagner was patrolling a “high narcotics area[] . . .
associated with known gang locations, gang hangouts.”  He saw appellant,
driving a vehicle, turn into the driveway of a residence where several
narcotics arrests had occurred.  Officer Wagner ran the vehicle’s license plate
number through his on-board computer, and the vehicle was identified as stolen
through the “NCIC/TCIC”[2]
system.  He parked nearby and watched the vehicle.  Shortly thereafter, he saw
the vehicle drive away from the residence; after radioing for backup, Officer
Wagner initiated a “felony stop” on the vehicle.[3] 


When the vehicle was stopped, appellant was a
back-seat passenger.  After appellant was ordered to exit the vehicle and lie
down on the ground, the officer handcuffed him.  Officer Wagner then frisked
appellant and discovered a small bag of narcotics in appellant’s pants pocket.[4]  After the
initial search, Officer Wagner had appellant walk to his patrol car.  As
appellant was walking to the vehicle, the officer noticed that appellant was
“walking clenched up, taking very small steps,” which indicated to Officer
Wagner that appellant might be hiding contraband on his person.  He then
conducted a more thorough pat-down search and noticed “some type of a metal
object” that was about the size of a small knife and something that felt like a
plastic bag in appellant’s pants.  Another officer grabbed the waistband of appellant’s
pants and vigorously shook his pants; more narcotics fell to the ground.  The
other officer pulled appellant’s waistband back and removed another large plastic
bag from the back of appellant’s pants, which contained a metal whisk about the
size of a small knife and a “very, very large amount” of crack cocaine.  

The entire stop and search happened “very fast.”  At
the same time that Officer Wagner was searching appellant, another individual
who had been in the car also was being searched; another officer discovered a
large bottle of prescription liquid codeine in his front pocket.  Other
officers searched the vehicle and found several bottles of prescription Xanax
in the back floorboard of the car where appellant had been sitting.  After
appellant was searched for the second time, he was placed in the backseat of Officer
Wagner’s patrol vehicle.  Once appellant was in the backseat of Officer
Wagner’s vehicle, appellant asked why the car had been pulled over.  Officer
Wagner explained that the car had been reported stolen, and appellant stated the
car was not stolen and belonged to him.  Officer Wagner then discovered that
appellant was the registered owner of the vehicle.

After the trial court denied his motion to suppress
the evidence, appellant pleaded “guilty” and, pursuant to a plea agreement with
the State, was sentenced to twenty years’ confinement.  The trial court
certified appellant’s right to appeal the denial of his motion to suppress.

II.  Analysis

In a single issue, appellant contends the trial court
erred in denying his motion to suppress.  We review a trial court’s ruling on a
motion to suppress “‘in the light most favorable to the trial court’s ruling.’” 
Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)).  If supported by the
record, a trial court’s ruling on a motion to suppress will not be overturned.  Mount
v. State, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no
pet.).  At a suppression hearing, the trial court is the sole finder of fact
and is free to believe or disbelieve any or all of the evidence presented.  Id.
 We give almost total deference to the trial court’s determination of
historical facts that depend on credibility and demeanor, but review de novo
the trial court’s application of the law to the facts if resolution of those
ultimate questions does not turn on the evaluation of credibility and demeanor.
 See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  When,
as in this case, there are no written findings in the record, we uphold the
ruling on any theory of law applicable to the case and assume the trial court
made implicit findings of fact in support of its ruling so long as those
findings are supported by the record.  State v. Ross, 32 S.W.3d 853, 855B56 (Tex. Crim. App. 2000).

In his motion to suppress, appellant argued that the
evidence should have been suppressed because the officers lacked probable cause
to “arrest or even detain” him.  Law enforcement officers may stop and briefly
detain persons suspected of criminal activity on less information than that
required for probable cause to arrest.  See Terry v. Ohio, 392 U.S. 1,
22 (1968); Chapnick v. State, 25 S.W.3d 875, 877 (Tex. App.—Houston
[14th Dist.] 2000, pet. ref’d).  An officer must have reasonable suspicion to
justify an investigatory stop.  See United States v. Sokolow, 490 U.S.
1, 7 (1989).  Reasonable suspicion for an investigatory detention arises when
an officer has specific articulable facts which, premised upon his experience
and personal knowledge and coupled with the logical inferences from those
facts, warrant intruding upon the detained citizen’s freedom.  Chapnick,
25 S.W.3d at 877.  The validity of the stop is determined from the totality of
the circumstances.  Id. (citing Sokolow, 490 U.S. at 8).

Officer Wagner testified that, at the time of the
felony stop, he had learned through the NCIC/TCIC system that the vehicle
appellant occupied had been reported stolen.  Thus, the officer had reasonable
suspicion to stop and detain the driver and passengers of the vehicle.  See
Brown v. State, 830 S.W.2d 171, 174–75 (Tex. App.—Dallas 1992, pet.
ref’d) (concluding that officer had reasonable suspicion to stop vehicle reported
stolen and detain driver and passengers).  Moreover, appellant concedes in his
reply brief[5]
that Officer Wagner “had reasonable suspicion to conduct a traffic stop and
briefly detain appellant to determine if appellant or another occupant was the
rightful owner of the car or if in fact the car was stolen.”  Thus, we conclude
that the record supports the trial court’s implied finding that Officer Wagner
had reasonable suspicion to stop and detain appellant.

Once a suspect has been lawfully detained, an officer
may conduct a limited search for weapons, or “protective frisk,” where it is
reasonably warranted for his safety and the safety of others, even in the
absence of probable cause.  See Terry, 392 U.S. at 27; see also
Balentine v. State, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002).  Such a
frisk is justified only when specific and articulable facts reasonably could
lead to the conclusion that the suspect might possess a weapon.  See
Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000).  “The
officer need not be absolutely certain that an individual is armed; the issue
is whether a reasonably prudent person would justifiably believe that he or
others were in danger.”  Balentine, 71 S.W.3d at 769.  

Appellant asserts that the record contains no
evidence that Officer Wagner believed he was in any danger.  But, as discussed
above, Officer Wagner testified that the vehicle in which appellant was
discovered had been reported stolen and was subject to a “felony stop.”  He
further explained that a felony stop is considered a “high risk” endeavor and
that the search of appellant was conducted for both his own safety and the
safety of the other officers.  See Michigan v. Long, 463 U.S. 1032, 1049
(1983) (noting that “roadside encounters between police and suspects are
especially hazardous”).  Officer Wagner testified that the vehicle had stopped
and driven away from a location known for narcotics activity.  See, e.g.,
Carmouch, 10 S.W.3d at 330 (stating that officer’s reasonable belief
suspect is armed and dangerous may be predicated on the nature of the suspected
criminal activity).  Thus, the record supports the trial court’s implied
finding that a reasonably prudent person in Officer Wagner’s situation would
justifiably believe that he or others might be in danger from those suspects discovered
in a stolen vehicle in an area known for narcotics and gang activity.  See Balentine,
71 S.W.3d at 769; Carmouche, 10 S.W.3d at 330 (noting that weapons and
violence are associated with drug transactions).  

An officer may lawfully seize contraband discovered during
a protective frisk if its “contour or mass makes its identity immediately
apparent.”  Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); see
also Baldwin v. State, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009)
(describing “plain feel” doctrine created in Dickerson).  The record
reflects that Officer Wagner described the narcotics discovered on appellant’s
person as follows:

This isn’t, like, a small [sic] four crack cocaine rocks
wrapped up in a small little piece of sandwich baggie where the guy tells me he
has it hidden on him and you have to go find it or something.  This is right
there.  All you’re doing is just removing something you already felt before he
gets in the backseat of the police car.

Thus, the record supports the
trial court’s implicit finding that the seizure of the contraband was pursuant
to the “plain feel” doctrine.  Cf. Brown, 830 S.W.2d at 175 (concluding
that cocaine found pursuant to pat-down search of passenger in vehicle reported
stolen was admissible in narcotics case against passenger).

Finally, we note that “to effectuate a valid arrest,
an officer must at that time have ‘probable cause to believe that a criminal
offense has been or is being committed’ by the person in question.”  Baldwin,
278 S.W.3d at 371 (quoting Devenpeck v. Alford, 543 U.S. 146, 152
(2004)).  Texas courts have concluded that an NCIC report indicating that a vehicle
has been reported stolen provides officers with probable cause to make a warrantless
arrest of the driver.  See Stevens v. State, 667 S.W.2d 534, 535, 538
(Tex. Crim. App. 1984) (en banc); Brown v. State, 986 S.W.2d 50, 52
(Tex. App.—Dallas 1999, no pet.).  As discussed above, Officer Wagner testified
that the NCIC/TCIC system indicated that the car appellant was seen driving (and
in which he later was apprehended as a passenger) had been reported stolen.  The
trial court therefore could have determined that Officer Wagner had probable
cause to arrest appellant prior to searching him, and that the contraband was
discovered during a search incident to arrest.[6] 
See Baldwin, 278 S.W.3d at 371 (explaining that if an officer validly
arrests a defendant, he may perform a search incident to arrest).  Under these
circumstances, we find no merit in appellant’s argument.

We overrule appellant’s sole issue on appeal and
affirm the trial court’s judgment.

 

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Frost.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 









[1]
Baldwin v. State, 278 S.W.3d 367, 379 (Tex. Crim. App. 2009).





[2]
The record does not indicate what these acronyms mean.





[3]
Officer Wagner described a “felony stop” as follows:

A
felony stop is just going to be . . . a lot like what everybody sees on “COPS,”
you know, when you order them out and you use your vehicle as protection. 
You’re going - - hopefully more than one patrol unit is going to come up
alongside you.  You’re going to use car doors and order the suspects out one at
a time.  You’re going to bring them back good and slow and at the time they’re
each going to be taken into custody individually.  They’re going to be
thoroughly searched and then they’re going to be placed in the backseat of the
patrol car after they’re handcuffed.

The officer elaborated that
this procedure is followed for officer safety because a situation involving a vehicle
identified as stolen is a “high-risk” stop. 





[4]
Officer Wagner stated that this stop occurred shortly after another police
officer had been shot by a suspect who had been placed, in handcuffs, in the
back of the officer’s patrol car.  Thus, officers were being extremely careful
to thoroughly pat down suspects for weapons before placing them in the back of
their patrol cars.





[5]
Appellant’s first appointed attorney was suspended from the practice of law in
May 2009.  We ordered this appeal abated so that new counsel could be
appointed.  Appellant’s new appointed counsel filed a reply brief in this court
on May 14, 2009.





[6]
Although the reportedly stolen vehicle actually belonged to appellant, “an
arrest is not invalid merely because an officer relies upon reasonably
trustworthy information that later proves to be erroneous.”  Mount, 217
S.W.3d at 728.